IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| YOLANDA C. OLIVER, | ) | CASE NO. 1:06 CV 2396 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## Introduction

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the application of the plaintiff, Yolanda C. Oliver, for disability insurance benefits.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Oliver had severe impairments consisting of myopic degeneration.[1]  The ALJ made the following finding regarding Oliver's residual functional capacity:

> [T]he claimant has the residual functional capacity to perform work with no exertional limitations and the following nonexertional limitations: Ms. Oliver has limited near visual acuity, limited far acuity, and limited depth perception. She should avoid dangerous moving machinery, hazards, and driving automotive equipment.[2]

---

[1] Transcript ("Tr.") at 13.

[2] *Id.* at 14.

The ALJ decided that the above-quoted residual functional capacity rendered Oliver unable to perform her past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing similar but not identical to the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Oliver could perform.[4]  The ALJ, therefore, found Oliver not under a disability.[5]

Oliver asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, she asserts four issues for review:

- Did the ALJ err by not finding Oliver's depression and headaches severe impairments at step two?

- Did the ALJ err by not giving full weight to the opinion of Oliver's treating ophthalmologist, Scott Pendergast, M.D.?

- Did the ALJ err by giving substantial weight to the opinion of the medical expert, Frank Cox, M.D.?

- Did the ALJ err by failing to include additional non-exertional limitations in the residual functional capacity finding?

I conclude that the ALJ's hypothetical to the vocational expert and the residual functional capacity finding do not have the support of substantial evidence because they fail to include specific limitations on Oliver's reading ability.  I, therefore, recommend that the

---

[3] *Id.* at 16.

[4] *Id.* at 17.

[5] *Id.* at 18.

Court reverse the decision of the Commissioner denying the application for disability insurance benefits and remand the case for further proceedings.

## Relevant Medical Evidence

As related to the issues presented for review, I find the following medical evidence relevant.

### A.    Myopic degeneration

Oliver was diagnosed with myopic degeneration of the right eye in October of 1997.[6] After undergoing laser photocoagulation of the right eye, she had distance vision in that eye with best correction to 20/300 and reading vision to 20/400.[7]

Since the August 4, 2003 onset date, she has treated with several ophthalmologists, including Michael Lee, M.D.;[8] David Bardenstein, M.D.;[9] Peter Kaiser, M.D.;[10] and Scott Pendergast, M.D.[11] The records of the physicians well-document Oliver's visual impairment.

Dr. Pendergast has provided certain evaluations of Oliver's impairment, which appear in the transcript. None can be characterized as a comprehensive residual functional capacity

---

[6] *Id.* at 211.

[7] *Id.* at 127.

[8] *Id.* at 93-96.

[9] *Id.* at 97-99.

[10] *Id.* at 120-25.

[11] *Id.* at 180-210, 245-46.

assessment – one in which the treating physician opines as to how Oliver's visual impairment translates into specific work-related limitations.

On August 20, 2003, there appears a note in Dr. Pendergast's file relating to an inquiry from Oliver's employer's Human Resources Department inquiring as to how long Oliver would be disabled.[12] Dr. Pendergast responded that Oliver should apply for long-term disability "just for her job."[13]  The note reads "can do other occupation."[14]

On October 28, 2003, Dr. Pendergast completed a report for the Bureau of Disability Determination.[15]  The form contained the following inquiry:

> If the claimant is not statutorily blind, please use the back to explain how the visual impairment, if any, affects this individual's ability to perform work-related activities (driving, reading, working at heights or other hazardous situations):"[16]

Dr. Pendergast did not respond to this inquiry.

On April 7, 2004, Dr. Pendergast completed a physician's statement for UnumProvident, apparently for disability payments through Oliver's employer.[17]  In the statement, he represented that Oliver could never return to her occupation.[18]  He made the

---

[12] *Id.* at 201.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 126-28.

[16] *Id.* at 128.

[17] *Id.* at 142.

[18] *Id.*

following observations:  decreased "vision both eyes/unable to read" and "diff... reading and distance both eyes."[19]

On January 20, 2005, Dr. Pendergast signed vision interrogatories.[20]  In his answers to those interrogatories, Dr. Pendergast made the following statements:  (1) it would not be reasonable to expect that Oliver would experience frequent headaches from her visual impairment,[21] and (2) Oliver would experience difficulty in reading.[22]

On February 7, 2005, Dr. Pendergast prepared another physician's statement for UnumProvident.[23]  In this statement, he observed that Oliver could not return to her present occupation but might be able to do something else.[24]  He again referenced difficulty with reading.[25]

Finally, on March 6, 2006, Dr. Pendergast wrote a short letter to Oliver's counsel in this case stating, "I believe it is reasonable that Yolanda Oliver needs to lie down for an hour in an eight-hour day due to her substantial vision limitations, headaches, and the resulting

---

[19] *Id.*

[20] *Id.* at 139-40.

[21] *Id.* at 139.

[22] *Id.* at 140.

[23] *Id.* at 141.

[24] *Id.*

[25] *Id.*

depression."[26]  He opined that this "need to rest" ... "would prevent consistent performance at a competitive work site."[27]

Frank Cox, M.D., a board certified internist, testified at the hearing before the ALJ.[28] He basically confirmed the medical findings of the treating ophthalmologists and opined that Oliver "would have to have a job that does not involve reading print or reading constantly."[29]

In posing the hypothetical to the vocational expert, the ALJ stated that Oliver could do "some reading,"[30] which he had Dr. Cox confirm,[31] but did not further specify how much reading Oliver could do.  The ALJ included no reading-related limitations in the residual functional capacity finding.[32]

## B.    Headaches and depression

In January 2004, Oliver complained to treating physician Debra Leizman, M.D. of headaches and depression.[33]  Dr. Leizman prescribed Prozac for depression and Naprosyn

---

[26] *Id.* at 255.

[27] *Id.*

[28] *Id.* at 287-95.

[29] *Id.* at 294.

[30] *Id.* at 297.

[31] *Id.*

[32] *Id.* at 14.

[33] *Id.* at 160.

for headaches.[34]  One month later, Dr. Leizman noted that Oliver's depression was better and her headaches were less regular.[35]

Over a year later, in April 2005, Oliver again reported depression, and Dr. Leizman prescribed Prozac.[36]

In December 2005, Oliver told Dr. Leizman that she was "coping fair" with her depression.[37]  Her headaches occurred daily.[38]  Dr. Leizman prescribed Atenolol for headaches.[39]

Two months later, in February 2006, Oliver told Dr. Leizman that her headaches had decreased in frequency and that her depression was better.[40]

Dr. Leizman's treatment notes contain multiple notations of complaints of headaches.[41]  Oliver testified before the ALJ that she suffers from headaches daily.[42]

---

[34] *Id.* at 153.

[35] *Id.* at 152.

[36] *Id.* at 144.

[37] *Id.* at 250.

[38] *Id.* at 249.

[39] *Id.* at 250.

[40] *Id.* at 247-48.

[41] *Id.* at 145, 152, 153, 247, 248, 249, and 250.

[42] *Id.* at 280-82.

# Analysis

**A.      Standard of review**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[43]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.      Substantial evidence does not support the ALJ's residual functional capacity finding.**

I conclude that the ALJ's residual functional capacity finding and the hypothetical posed to the vocational expert are defective for want of specific limitations upon Oliver's ability to read.  Oliver's fourth issue, therefore, is dispositive and should require a remand.

---

[43] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Oliver's visual impairment is well-documented and is not an issue.  What is unclear in the transcript is the extent to which that impairment caused work-related limitations. Dr. Pendergast, Oliver's treating ophthalmologist, makes numerous references to difficulties with reading.[44]  Dr. Cox, the medical expert, concurred that Oliver "would have to do a job that does not involve reading print or reading constantly."[45]  He confirmed that Oliver could do some reading.[46]  Neither Dr. Pendergast nor Dr. Cox, however, offered any specific reading limitations in their opinions.

The hypothetical to the vocational expert provided for "some reading."[47]  The residual functional capacity finding contained no limitations on reading.[48]  Because of Oliver's well-documented and uncontroverted visual impairment, both the hypothetical and the residual functional capacity finding should have included a specific limitation on Oliver's reading capability.  It may well be that the jobs identified by the vocational expert could be performed by a person who cannot "read print" or "read constantly," Dr. Cox's assessment.[49] But, in this case, the vocational expert was not given those limitations.

_____

[44] *Id.* at 140, 141, and 142.

[45] *Id.* at 244.

[46] *Id.* at 298.

[47] *Id.*

[48] *Id.* at 13.

[49] *Id.* at 294.  I seriously question whether these general limitations, even if incorporated into the hypothetical, would have provided the basis for an opinion sufficient to support a finding at step five.

At the oral argument in this case, counsel did discuss with the Court the problem presented by the lack of medical experts specializing in ophthalmology.  It would seem that an ophthalmologist is best qualified to translate the medical evidence of Oliver's impairment into specific reading limitations.[50]  The ALJ, therefore, may want to consider obtaining the opinion of an examining, consulting ophthalmologist.

Although I recommend a remand on the ground discussed above, I will proceed to discuss Oliver's remaining three issues.

As to the first issue, Oliver's primary care physician, Dr. Leizman, did diagnose and treat Oliver for depression and headaches based upon her subjective complaints.  The progress notes of Dr. Leizman do establish, however, that these conditions improved in response to medication prescribed.[51]  Under the law of the Sixth Circuit, in *Maziarz v. Secretary of Health and Human Services*,[52] an ALJ does not commit reversible error if he fails to include an impairment as a severe impairment at step two if he proceeds on to analysis at steps four and five, and there is no basis in the record for any further limitations based upon the impairments at issue.[53]  Here, Dr. Leizman's progress notes do show

---

[50] The ALJ must take care not to interpret raw medical in functional terms.  *Nyguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).  What is needed here is a qualified medical source to answer the inquiry made in the report to the Bureau of Disability Determination referred to above:  "explain how the visual impairment ... affects the individual's ability to perform work-related activities (... reading ...)."  Tr. at 128.

[51] Tr. at 247-48, 250.

[52] *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240 (6th Cir. 1987).

[53] *Id.* at 244.

improvement after medication, and she does not offer a residual functional capacity opinion. Although the standard at step two is *de minimus*,[54] I do not find, under the substantial evidence standard, a basis in the transcript for including additional limitations in the residual functional capacity finding for depression and headaches.

As for Dr. Pendergast's opinion, Oliver's second issue, the ALJ correctly noted, and the Commissioner appropriately argues, that there are inconsistencies in his opinion.  At times he opines that she can do no work,[55] and at other times he opines that she can do work other than her past relevant work.[56]  Such inconsistencies do provide a basis for discounting his opinion.[57]  Further, Oliver seeks to rely upon his opinion that the combination of her vision problems, depression, and headaches makes it necessary for her to take a long rest during the workday, making her unemployable.  However, Dr. Pendergast was not treating her for depression or headaches, and his notes indicate that her vision problems were not causing her headaches.[58]

Moreover, Dr. Pendergast's opinions of unemployability, apart from being inconsistent, are conclusory and not entitled to deference.[59]  When asked to offer specific

---

[54] *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987).

[55] Tr. at 142, 255.

[56] *Id.* at 141, 201.

[57] *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (*en banc*).

[58] Tr. at 139.

[59] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

-11-

work-related limitations, he did not do so.[60]  What is significant is that his diagnosis and documentation of Oliver's impairment are uncontroverted.  As discussed above, this medical evidence should provide a sufficient basis for a medical source opinion that will support a sustainable residual functional capacity finding.

In her third issue, Oliver challenges Dr. Cox's opinion on the basis that he is not an examining physician and is not an ophthalmologist.  What is critical here is that Dr. Cox does not take issue with Dr. Pendergast's diagnosis of visual problems and, in fact, does recognize some restrictions based on reading.  Because of the defect with the hypothetical and the residual functional capacity finding, the weight assigned by the ALJ to Dr. Cox's opinion is not dispositive of the decision here.  As discussed above, the ALJ should go beyond Dr. Cox's general testimony as to reading limitations in reconsidering the residual functional capacity finding.

## Conclusion

Based on the foregoing, I recommend that the Court reverse the decision of the Commissioner denying Oliver's application for disability insurance benefits and remand the decision for reconsideration of the residual functional capacity finding to include specific limitations on Oliver's reading ability.

Dated:  March 26, 2008                    s/ William H. Baughman, Jr.
                                          United States Magistrate Judge

---

[60] Tr. at 128.

-12-

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[61]

---

[61] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-13-